UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN COTTER LAMPING,

    Petitioner,                                    Case No. 12-11805

v.                                                 HONORABLE STEPHEN J. MURPHY, III

STATE OF MICHIGAN,

    Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE
OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS**

John Cotter Lamping, presently residing in Fraser, Michigan, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] In his pro se application, petitioner challenges his conviction for assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84; felonious assault, Mich. Comp. Laws § 750.82; and failure to stop at the scene of an accident, Mich. Comp. Laws § 257.617. For the reasons stated below, the Court will deny the application for writ of habeas corpus.

---

[1] The Michigan Department of Corrections' Offender Tracking Information System (OTIS), of which this Court is permitted to take judicial notice, *see Ward v. Wolfenbarger*, 323 F. Supp. 2d 818, 821, n.3 (E.D. Mich. 2004), indicates that Lamping was discharged from his sentence on April 13, 2013 and is no longer in custody. Sections 2241(c)(3) and 2254(a) require that a habeas petitioner be "in custody" under the conviction or sentence under attack at the time that a habeas petition is filed in the federal court. *See Maleng v. Cook*, 490 U.S. 488, 490-91 (1989). Because Mr. Lamping was still serving his sentence at the time he filed his petition, he satisfies this "in custody" requirement, in spite of his subsequent discharge. Once federal jurisdiction has attached to a habeas petition in federal district court, "it is not defeated by the release of the petitioner prior to completion of proceedings" on his or her habeas application. *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968).

## BACKGROUND

Lamping was convicted of the relevant charges following a jury trial in the Macomb County Circuit Court.

Stephanie Turskey picked up her boyfriend, Timothy Moore, on March 9, at his Clinton Township, Michigan home. Tr. 6/10/09, pp. 4-5, 11, 107-08. Turskey and Moore were heading to a nearby fitness center when they noticed that they were being tailgated by a person, who they later identified as Lamping, driving a small black car. *Id.* at pp. 7, 108-10. Turskey described him as a "white Caucasian with dark hair" and stated that he was making "gestures" at her. *Id.* at pp. 7-8. Turskey and Moore both testified that Lamping was throwing his arms up in the air and holding up his middle finger. *Id.* at pp. 7-8, 110-11. They gestured back even though Turskey was afraid. *Id.* at pp. 8, 76, 111.

Turskey eventually turned into the fitness center's parking lot and pulled into a parking spot. *Id.* at 9-10, 111-14. Lamping drove past the fitness center's parking lot, before slamming on the brakes, screeching to a halt, shifting into reverse, and driving into the parking lot. Lamping parked his car so that the front of it faced Turskey's car. He began yelling at Turskey and Moore and made more gestures at them. *Id.* at 10-11, 112-15.

Turskey was afraid to exit her vehicle. Moore told Turskey that he would walk over to her side of the car and they could go into the fitness center together. Moore got out of the car. Moore and Lamping began arguing with one another. Turskey heard Lamping state that he was going to hit Moore with his car. *Id.* at pp. 11-14, 115-16.

Moore began walking over to Turskey's side of the car. When Moore reached the rear passenger side of the car, Lamping's car "came at him," hitting Moore and crushing his right leg between the two vehicles. *Id.* at p. 15. Lamping then put the car into reverse

2

and drove out of the parking lot, heading northbound. Turskey noticed another car that was in the parking lot at the time follow after Lamping's vehicle. Turskey called 911 to report that Moore had been hit by a car. Turskey then went to assist Moore, who was lying on the ground screaming with what appeared to be a compound leg fracture. Both Moore's tibia and fibula were broken. *Id.* at pp. 15-18, 116-19; Tr. 6/11/09, p. 9.

Joel Thompson was in the fitness parking lot and witnessed the assault. Thompson followed Lamping's vehicle, which was a black Eagle Talon, out of the fitness center parking lot, as it fled the scene. Tr. 6/10/09, pp. 164-73. After Lamping turned onto another road, Thompson followed, but had to accelerate to speeds of up to 80 mph in order to catch up to the vehicle. Thompson indicated that the Talon ran through two red lights and then turned in another direction. Thompson stopped following the vehicle at this point because he had already written the license plate number down on a receipt that he had with him. *Id.* at pp. 175-77.

Thompson returned to the fitness center parking lot and gave a police officer who was on the scene a description of the driver of the car as well as the license plate number of the vehicle. Tr. 6/10/09, p. 179; Tr. 6/11/09, pp. 7-8, 22, 27. A second police officer at the scene ran the license plate number and determined the vehicle was registered to John Lamping. Thompson was shown a photograph of Lamping from the policeman's vehicle's computer and he identified Lamping as the driver of the black Eagle Talon. Tr. 6/10/09, pp. 179-80, Tr. 6/11/09, pp. 28-31. Turskey likewise positively identified Lamping after seeing his photograph on the police vehicle's computer. Tr. 6/10/09, p. 21, Tr. 6/11/09, pp. 28-31.

Lamping's car was registered to his address in Fraser, Michigan. Police officers from the Fraser Police Department went to that address and found the Talon parked outside,

behind the residence. Tr. 6/11/09, pp. 30-31. The hood of the car was still warm. An officer knocked on the front door and received no response. Officers saw a window shade move, and it appeared that someone was looking out the window. *Id.* at pp. 33-34. The officers impounded the vehicle. *Id.* at 34-37.

Lamping was convicted and sentenced to two to ten years' imprisonment for assault with intent to do great bodily harm; two to four years' imprisonment for felonious assault; and two to five years' imprisonment for failure to stop at the scene of an accident. Lamping's conviction was affirmed on appeal. *People v. Lamping*, No. 293538, 2010 WL 4628689 (Mich. Ct. App. Nov. 16, 2010), *lv. den.* 489 Mich. 899 (2011).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. [The] Clinton Township Police used a leading and suggestive identification technique by showing a single photograph on a police car computer screen and asking a witness "is this the guy?"

II. [The] Clinton Township Police were allowed to [effect] an unconstitutional seizure of a suspect vehicle.

III. The prosecutor engaged in vindictive prosecution by raising the indictment from one felony to four after defendant would not plead to the first charge.

IV. The sentencing based on "permanent incapacitating injury" was in error.

## STANDARD OF REVIEW

Section 2254(d) of Title 28, United States Code, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). This court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state -court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

## DISCUSSION

A.  Claim 1: Suggestive Identification

Lamping first alleges that the trial court erred in refusing to suppress the on-scene and in-court identifications made of petitioner by Turskey and Thompson because of an unduly suggestive photographic identification procedure. Specifically Lamping argues that the Clinton Township Police used a "leading and suggestive identification technique" when the officer showed Thompson and Turskey a photograph of Lamping on the police computer, asking "is this the guy?"

Due process protects the accused against the introduction of evidence from an

5

unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). To determine whether an identification procedure violates due process, courts look first to whether the procedure was impermissibly suggestive; if it was, courts then determine whether, under the totality of circumstances, the suggestiveness has led to a substantial likelihood of an irreparable misidentification. *See Gross v. Warden, Lebanon Correctional Inst.,* 426 F. App'x 349, 362 (6th Cir. 2011). Five factors should be considered in determining the reliability of identification evidence:

> 1. the witness's opportunity to view the criminal at the time of the crime;
> 2. the witness's degree of attention at the time of the crime;
> 3. the accuracy of the witness's prior description of the defendant;
> 4. the witness's level of certainty when identifying the suspect at the confrontation; and,
> 5. the length of time that has elapsed between the time and the confrontation.

*Neil v. Biggers,* 409 U.S. 188, 199-200 (1972); *Gross,* 426 F. App'x at 362.

A criminal defendant has the initial burden of proving that the identification procedure was impermissibly suggestive; it is only after a defendant meets this burden of proof that the burden then shifts to the prosecutor to prove that the identification was reliable independent of the suggestive identification procedure. *See Johnson v. Warren,* 344 F. Supp. 2d 1081, 1090 (E.D. Mich. 2004) (citing *English v. Cody,* 241 F. 3d 1279, 1282-83 (10th Cir. 2001) (citing *United States v. Wade*, 388 U.S. 218, 240, n. 31 (1967)). If a defendant fails to show that the identification procedures are impermissibly suggestive, or if the totality of the circumstances indicate that the identification is otherwise reliable, no due process violation has occurred. So long as there is not a substantial likelihood of misidentification, it is for the jury or factfinder to determine the ultimate weight to be given to the identification. *See United States v. Hill*, 967 F. 2d 226, 230 (6th Cir. 1992).

Lamping has failed to show that the police engaged in an improper identification procedure in this case because when the officer showed the witnesses Lamping's photograph it was analogous to an on-scene showup. The Sixth Circuit has "repeatedly held that prompt certain, on-the-scene show ups are not unnecessarily suggestive." *U.S. v. Akins*, No. 08-20397, 2010 WL 6840997, at *4 (W.D. Tenn. Dec. 17, 2010); *see, e.g.*, *Stidham v. Wingo*, 482 F.2d 817, 818-19 (6th Cir. 1973) (finding show-up at the scene of the arrest permissible under the Fourth Amendment); *U.S. v. Craig*, 198 F. App'x 459, 467 (6th Cir. 2006) (show-up identification of bank robbers twenty minutes after arrest was not unduly suggestive); *Bruner v. Perini*, 875 F.2d 531, 535 (6th Cir. 1989) (witness's on-scene identification of robber within thirty minutes of crime was not unduly suggestive). In fact, the *Craig* court observed that "prompt, on-the-scene confrontation is consistent with good police work," because it enables officers to quickly exclude innocent suspects and "resume the search for the fleeing suspect while the trail is still fresh." *Id.* (citations omitted). Here, the police were justified in showing Lamping's photographs to the witnesses because a serious felony had just occurred, and the suspect was still at large and may have been still driving the car that he had just used to assault Moore.

Moreover, the witnesses' in-court identification of Lamping as the perpetrator of the assault was sufficiently reliable to be admissible, notwithstanding the on-scene show-up procedure. The witnesses gave reasonably accurate descriptions of the perpetrator to the police, showed no uncertainty in identifying Lamping, and the show-up took place within minutes of the assault. *See Bruner,* 875 F. 2d at 535 (robbery victim's in-court identification of defendant as robber was sufficiently reliable to be admissible, notwithstanding police officers' exhibition of defendant to victim shortly after robbery, where victim had close,

7

face-to-face encounter with robber, her attention was focused, she gave reasonably accurate description of robber to police, she showed no uncertainty in making the identification after the robbery, and the identification took place only about 30 minutes after the robbery).

Accordingly, the state court's decision regarding the admissibility of the identification evidence was neither contrary to, nor an unreasonable application of clearly established federal law. Lamping is not entitled to habeas relief on his first claim.

B.  Claim 2: Illegal search and seizure

Lamping next claims that the trial court erred in denying his motion to suppress any evidence from the allegedly illegal seizure of his car.

A federal habeas review of a petitioner's arrest or search by state police is barred where the state has provided a full and fair opportunity to litigate an illegal arrest or a search and seizure claim. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976); *Machacek v. Hofbauer*, 213 F. 3d 947, 952 (6th Cir. 2000). For such an opportunity to exist, the state must provide, in the abstract, a mechanism by which the petitioner can raise the claim, and presentation of the claim must not be frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F. 2d 522, 526 (6th Cir. 1982). The relevant inquiry is whether the habeas petitioner had an *opportunity* to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided. *See Wynne v. Renico,* 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003), *rev'd on other grounds*, 606 F.3d 867 (6th Cir. 2010). Indeed, under *Stone*, the correctness of a state court's conclusions regarding a Fourth Amendment claim "is simply irrelevant." *See Brown v. Berghuis,* 638 F. Supp, 2d 795, 812 (E.D. Mich. 2009). "The courts that have considered the matter 'have consistently

held that an erroneous determination of a habeas petitioner's Fourth Amendment claim does not overcome the *Stone v. Powell* bar.'" *Id.* (quoting *Gilmore v. Marks*, 799 F.2d 51, 57 (3rd Cir. 1986)). Thus, an argument by a habeas petitioner that is "directed solely at the correctness of the state court decision[on a Fourth Amendment claim] 'goes not to the fullness and fairness of his opportunity to litigate the claim[s], but to the correctness of the state court resolution, an issue which *Stone v. Powell* makes irrelevant.'" *Brown*, 638 F. Supp. 2d at 812-13 (quoting *Siripongs v. Calderon*, 35 F. 3d 1308, 1321 (9th Cir. 1994)).

In light of the foregoing, Lamping's Fourth Amendment claim is not reviewable. He raised the factual basis for the claim in the state trial and appellate courts and the state courts thoroughly analyzed the facts and applied the proper constitutional law in rejecting his claim. *Machacek*, 213 F. 3d at 952. Because Lamping "received all the process he was due," *Stone* bars this Court's review of the claim and Lamping is not entitled to habeas relief. *Id.*; Brown, 638 F. Supp. 2d at 813.

C.  Claim 3: Prosecutorial Vindictiveness

Lamping next contends that the prosecutor engaged in vindictive conduct when he filed additional charges of assault with intent to do great bodily harm less than murder, felonious driving, and failure to stop at the scene of an accident when Lamping refused to plead guilty to the original charge of felonious assault.[2]

It is " 'patently unconstitutional' " for a prosecutor to pursue a course of action whose objective is to penalize a criminal defendant's reliance on his protected statutory or constitutional rights. *See United States v. Goodwin*, 457 U.S. 368, 372, n.4 (1982) (quoting

---

[2]The prosecutor dismissed the felonious driving charge prior to trial.

9

*Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)). "A prosecutor vindictively prosecutes a person when he or she acts to deter the exercise of a protected right by the person prosecuted." *United States v. Anderson*, 923 F.2d 450, 453 (6th Cir.1991). Therefore, "a criminal prosecution which would not have been initiated but for vindictiveness is constitutionally prohibited." *Bragan v. Poindexter,* 249 F.3d 476, 481 (6th Cir. 2001) (citing *United States v. Adams*, 870 F. 2d 1140, 1145 (6th Cir.1989) (quoting *Blackledge v. Perry*, 417 U.S. 21, 27-28 (1974)).

A criminal defendant may prove prosecutorial vindictiveness in one of two ways. First, a defendant may demonstrate "actual vindictiveness," by establishing "through objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights." *Bragan,* 249 F. 3d at 481 (citing *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987) (citing *Goodwin*, 457 U.S. at 380-81, 384 & n.19)). This type of showing, however, is "exceedingly difficult to make." *Id.* (quoting *Meyer*, 810 F. 2d at 1245). Second, a defendant may show that in his particular case, there existed a "'realistic likelihood of vindictiveness'" for the prosecutor's action. *Bragan,* 249 F. 3d at 481 (quoting *United States v. Andrews,* 633 F. 2d 449, 453 (6th Cir. 1980)). "A court may only presume an improper vindictive motive when a reasonable likelihood of vindictiveness exists." *Id.* (citing *Goodwin*, 457 U.S. at 373). A petitioner must show that (1) the prosecutor had "some 'stake'" in deterring the petitioner's exercise of his rights and (2) that the prosecutor's conduct was somehow "unreasonable." *Id.* at 482.

Lamping has failed to show that he was the victim of prosecutorial vindictiveness. After his arrest, Lamping and the prosecution entered into an agreement whereby Lamping would be charged only with felonious assault, in exchange for his agreement to plead guilty

10

to that claim. When Lamping, despite the agreement, subsequently refused to plead guilty to felonious assault, the prosecution brought the additional charges of assault with intent to do great bodily harm and failure to stop at the scene of an accident. The district court then bound Lamping over to the circuit court on all counts.

In *Bordenkircher v. Hayes*, the Supreme Court held that the Due Process Clause of the Fourteenth Amendment does not prohibit a prosecutor from carrying out a threat, made during plea negotiations, to bring additional charges against a criminal defendant who refuses to plead guilty to the offense or offenses for which he was originally charged. 434 U.S. 363. The Supreme Court ruled that in a plea bargaining situation, "there is no such element of punishment or retaliation as long as the accused is free to accept or reject the prosecutor's offer." *Id.* In *United States v. Goodwin*, *supra*, the Supreme Court commented:

> [T]he outcome in *Bordenkircher* was mandated by this Court's acceptance of plea negotiation as a legitimate process. In declining to apply a presumption of vindictiveness, the Court recognized that "additional" charges obtained by a prosecutor could not necessarily be characterized as an impermissible "penalty." Since charges brought in an original indictment may be abandoned by the prosecutor in the course of plea negotiation-in often what is clearly a "benefit" to the defendant-changes in the charging decision that occur in the context of plea negotiation are an inaccurate measure of improper prosecutorial "vindictiveness." An initial indictment-from which the prosecutor embarks on a course of plea negotiation-does not necessarily define the extent of the legitimate interest in prosecution. For just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded.

*Goodwin,* 457 U.S. at 378-80.

Consistent with *Bordenkircher* and *Goodwin*, the Sixth Circuit has repeatedly held that the pretrial addition of criminal charges against a defendant after he refuses to plead guilty does not amount to vindictive prosecution. *See U.S. v. DeJohn,* 368 F. 3d 533, 545

(6th Cir. 2004); *United States v. Walls*, 293 F.3d 959, 970 (6th Cir. 2002); *United States v. Suarez*, 263 F.3d 468, 479-80 (6th Cir. 2001); *Andrews*, 633 F. 2d at 456. Indeed, a prosecutor may hold some criminal charges against a defendant in abeyance as an inducement during plea bargain negotiations, without being vindictive, so long as the additional charges are supported by probable cause. *See Suarez,* 263 F. 3d at 480.

Accordingly, in the present case, the prosecutor did not act improperly by charging Lamping with additional criminal offenses after he declined to plead guilty to felonious assault. Lamping has therefore failed to show that the state court decision rejecting his prosecutorial-vindictiveness argument was contrary to or an unreasonable application of clearly established federal law. Lamping is not entitled to habeas relief on this claim.

D.     Claim 4: Sentencing Guidelines

Finally, Lamping claims that the trial court improperly scored his sentencing guidelines range under the Michigan Sentencing Guidelines. This claim is not cognizable on federal habeas review. *See Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007); *Howard v. White,* 76 F. App'x 52, 53 (6th Cir. 2003); *Whitfield v. Martin,* 157 F. Supp. 2d 758, 762 (E.D. Mich. 2001). He has "no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence," *see Mitchell v. Vasbinder,* 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009), and "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Lamping's claim that the state trial court improperly departed above the correct sentencing guidelines range therefore does not entitle him to habeas relief. *See Austin v. Jackson*, 213 F. 3d 298, 301 (6th Cir. 2000).

In sum, none of Lamping's claims warrant the relief he seeks.

## CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253, before a petitioner may appeal a decision of this Court, the Court must determine if petitioner is entitled to a Certificate of Appealability ("COA"). 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). The Court must either issue a COA indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R.App. P. 22(b). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4 (1983)).

In applying the above standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Miller-El v. Cockrell*, 537 U.S. at 336-37. "When a habeas applicant seeks permission to initiate appellate review of the dismissal of his petition," a federal court should "limit its examination to a threshold inquiry into the underlying merit of his claims." *Id.* at 323. The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *see also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

After conducting the required inquiry, and for the reasons stated in the order above,

13

the Court finds that Lamping has not made a substantial showing of the denial of a constitutional right with respect to his claims. *See* 28 U.S.C. § 2253(c)(2). Petitioner should not receive any encouragement to proceed further. *Slack*, 529 U.S. at 484. Because the Court can discern no good faith basis for an appeal, *see Miller-El*, 537 U.S. at 338, any appeal would be frivolous. The Court will therefore deny a certificate of appealability. *See Long v. Stovall,* 450 F. Supp. 2d 746, 755 (E.D. Mich. 2006). The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *See Hence v. Smith*, 49 F. Supp. 2d 547, 549 (E.D. Mich. 1999).

## ORDER

**WHEREFORE** it is hereby **ORDERED** that the petition for a writ of habeas corpus is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that petitioner will be denied leave to appeal *in forma pauperis.*

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: July 31, 2013

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 31, 2013, by electronic and/or ordinary mail.

Carol Cohron
Case Manager